[Civ. No. 4187. Third Appellate District.—March 9, 1931.]

WILLIAM P. WILKINSON, as Administrator, etc., Respondent, v. I. G. ZUMWALT, Appellant.

U. W. Brown for Appellant.

George R. Freeman for Respondent.

MR. JUSTICE PLUMMER DELIVERED THE OPINION OF THE COURT.—The plaintiff had judgment against the defendant for the return of 119 warrants of Reclamation District No. 2047, or the value thereof, in the event that the return of the warrants could not be had. From this judgment the defendant appeals.

The findings made by the trial court establish the following facts: That J. F. Wilkinson, deceased, died on or about the twenty-third day of January, 1924, in the county of Colusa, state of California, of which county he was then a resident; that on February 25, 1924, William P. Wilkinson was appointed the administrator of the estate of J. F.

Wilkinson, deceased, and letters of administration were issued to him; and that ever since said twenty-fifth day of February, 1924, the plaintiff has been the administrator of the estate of said deceased; that at the time of the death of the said J. F. Wilkinson, the decedent was the owner of 119 warrants issued by Reclamation District No. 2047; that said warrants were negotiable instruments and were issued payable to the order of J. F. Wilkinson; that thereafter, and on or about the sixteenth day of July, 1928, one Charles K. Atran, an attorney at law who was acting as attorney for the plaintiff herein, as administrator of the estate of said deceased, presented to the Superior Court of the County of Colusa a petition on behalf of said administrator praying for an order authorizing the plaintiff, as such administrator, to sell the warrants hereinbefore referred to; that at said time said warrants were in the possession of the secretary of Reclamation District No. 2047; that said warrants had not been indorsed by this plaintiff, nor at any time have said warrants, or any of them, been indorsed by this plaintiff; that the plaintiff did not authorize or direct the said Charles K. Atran to obtain possession of said warrants, or of any of them, from the secretary of said reclamation district, for the purpose of sale or delivery to the defendant herein, nor did he indorse said warrants, or any of them, to said Atran for any purpose; that on the sixteenth day of July, 1928, the court made an order authorizing the plaintiff, as such administrator, to sell said warrants at private sale, and thereafter, and on the same day, Charles K. Atran, without the knowledge or consent of plaintiff, obtained possession of said 119 warrants and delivered them to the defendant herein, and defendant paid to said Atran the sum of $1514.70; that said plaintiff did not, at any time, authorize said delivery of said warrants, or any of them, to the defendant, nor did said plaintiff receive said sum of $1514.70, or any part thereof.

The court further found that the plaintiff did not sell said warrants; did not convey or deliver the same to the defendant, and that no sale of said warrants had been confirmed by the court. The court further found that the plaintiff did not know of the delivery of said warrants to the defendant until several months thereafter, and that on or about the fifteenth day of June, 1929, the plaintiff made a

demand upon the defendant for the return of said warrants. The description of the warrants contained in the findings not being necessary for the purposes of this decision, such description is omitted.

Upon this appeal the appellant contends that as Atran was an attorney for the plaintiff as administrator of the estate of J. F. Wilkinson, deceased, he was the agent of the plaintiff, and that any loss suffered by the plaintiff or the estate of J. F. Wilkinson by reason of Atran's derelictions or defalcations, must be borne by the plaintiff. It may be stated here that a search of the record fails to disclose that the plaintiff ever placed any funds of the estate in the hands of attorney Atran, or authorized him to collect any moneys belonging to the estate; that there is nothing in the record to show that Atran was either an actual or ostensible agent of the plaintiff. All that the record shows is substantially as follows: That attorney Atran had some negotiations with the defendant relative to the purchase of the warrants involved. in this action, and that the defendant offered to buy the same, and pay therefor eighty cents on the dollar for the original warrants and sixty cents on the dollar for the interest warrants; that Atran communicated this offer to the plaintiff, and the plaintiff wrote Atran that he would accept the defendant's offer of eighty cents for the original warrants and sixty cents for the interest warrants. Thereafter, on July 16, 1928, the defendant gave to Atran his personal check for the sum of $1514.70, payable to the order of Charles K. Atran, and attorney Atran obtained possession of said warrants and delivered the same to the defendant; that said warrants were made payable to the order of J. F. Wilkinson, then deceased, and were delivered by Atran to the defendant without any indorsement thereon. The record shows that the warrants, in the condition which we have just stated, were brought to the office of the defendant by Atran and delivered to him, and that the check was made payable to attorney Atran at the request of said Atran. The letter from the plaintiff to Atran relative to the acceptance of the defendant's offer to purchase the warrants, is in the following language:

"Yours of the 10th received regarding the warrants. I will accept the offer of Mr. Zumwalt, 80 for the originals and

60 for the others. I trust we may now proceed to final settlement without further delay.

"Sincerely yours,

"WILLIAM P. WILKINSON."

At the time of the writing of this letter, the warrants were in the possession of the secretary of Reclamation District No. 2047. The secretary, without any order from the plaintiff as administrator of the estate of J. F. Wilkinson, delivered said warrants to attorney Atran. The answer of the secretary upon what authority he delivered the warrants to Atran, is in the following words: "Why, Mr. Atran showed me a letter from Mr. Wilkinson whereby he had agreed to accept a certain price for the warrants, and I knew, from what had been going on in the office, they had been negotiating for the sale for some time, so when he called for them I gave them to him." It requires no argument to show that this letter did not authorize the delivery of the warrants by the secretary to Mr. Atran.

A certain letter introduced in evidence written by Mr. William P. Wilkinson, in relation to the warrants and as to where they should be placed, is as follows: ". . . In reply I told him I expected to be called over to Colusa most any day, and asked him to keep them there until I came. So the warrants are at the office over there. If you will get them and turn them over to the Colusa County Bank, it will save sending them here and back again. You can then have them issue the interest warrants covering the original ones." No other letter or authorization with regard to the disposition of the warrants or where they should be placed appears to have been made by the plaintiff.

The defendant testified that when the warrants were delivered to him by Atran he looked at the warrants and observed that they were made payable to J. F. Wilkinson, and that he took the warrants without their having been indorsed by the administrator of the estate, and that he made the check in payment of the warrants to Atran, at Atran's request. The letter which we have just quoted did authorize Atran to obtain possession of the warrants for a limited purpose, to wit, to deliver them to the Colusa County Bank, the evident purpose being that the warrants should remain there until the plaintiff, whose residence was

in Placerville, should go to Colusa, call at the bank and indorse the same.

Upon this appeal the appellant contends that the evidence is insufficient to support the finding of the court that said warrants were in possession of the secretary of the district on the sixteenth day of July, 1928, the secretary testifying that he thought the warrants were delivered after Atran had showed him a letter from Wilkinson which he thought was dated July 13, 1928. This is the letter in which the plaintiff had stated that he would accept an offer of eighty cents for the original warrants and sixty cents on the dollar for the interest warrants. This testimony, of course, is utterly insufficient to support the claim of the appellant that the finding of the court is unsupported. The mere matter of whether the warrants remained in possession of the secretary until the sixteenth day of July, 1928, is wholly immaterial, as it is evident by the testimony of the secretary that he had the warrants in his possession until the letter dated July 13, 1928, was exhibited to him. The matter of the dates in nowise affects the substance of the finding.

The finding of the court that the plaintiff did not authorize or direct the said Charles K. Atran to obtain possession of said warrants, or any of them, from the secretary of said reclamation district for the purposes of sale or delivery to the defendant herein, nor did he indorse said warrants, or any of them, to said Atran for any purpose, is challenged by the appellant as not being supported by the evidence. The evidence which we have set forth, however, conclusively shows that Atran was not authorized to obtain possession of the warrants, or any of them, for the purpose of delivery to the defendant. That he was authorized to obtain the warrants and deposit them in the Colusa County Bank is shown by the record. The words in the record, "nor did he indorse said warrants, or any of them, for any purpose", may be disregarded as surplusage, as they do not affect the legal rights of the parties involved in this action. At no time was Atran ever authorized to sell or deliver to any purchaser, the warrants involved in this action. The finding of the court that the plaintiff never sold or delivered any of the warrants to the defendant is likewise challenged. A review of what we have hereinbefore set forth shows clearly that this assignment is without

merit. There is no pretense anywhere that the plaintiff ever made any sale or authorized anyone to make any sale, or ever indorsed the warrants to anyone, which indorsement was necessary to transfer the title to the property.

█ Section 283 of the Code of Civil Procedure specifies the authority that may be exercised by an attorney and counsellor at law, to wit, to bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise, to receive money claimed by his client in an action or proceeding during the pendency thereof, or after judgment, etc. Nothing of this kind appears in the record before us. The attorney was not acting in any proceeding in court, and he was not collecting any money due upon any judgment. The purchaser of the warrants in question, as shown by his own testimony, knew that the warrants were made and drawn in favor of J. F. Wilkinson, deceased, and that in order to transfer title they should be indorsed by William P. Wilkinson, as administrator of the estate of J. F. Wilkinson, deceased, and yet, notwithstanding this fact, he not only accepted the warrants without indorsement, but drew his check in favor of the attorney, and not in favor of the administrator of the estate.

The appellant calls our attention to the case of *In re Ogier's Estate*, 101 Cal. 381 [40 Am. St. Rep. 61, 35 Pac. 900, 901], where it is said (quoting from page 385) : ''Every executor and administrator is chargeable in his account with the whole of the estate of the decedent which may come into his possession, and while, in the settlement of his account, he will be allowed all necessary expenses in the care, management and settlement of the estate, including reasonable fees paid to attorneys for conducting the necessary proceedings or suits in courts, still such allowances can be made only to him, and not to the attorney. And if the attorney employed should be derelict in his duty, and should receive and misappropriate funds of the estate, the executor would be liable therefor to the legatees under the will.'' We may admit the correctness of this statement, but its application to the instant case is an entirely different matter. █ The fact that the administrator of the estate of J. F. Wilkinson might be liable to the heirs of J. F. Wilkinson for the value of these warrants does not relieve the defendant from his

liability for having wrongfully and unlawfully obtained possession of the same. Having bought the warrants with his eyes open, without any indorsement from the administrator of the estate, and having paid someone wholly unauthorized to receive the money, the fact that the administrator might be liable for the value of the warrants when he comes to deliver the estate to the heirs of J. F. Wilkinson, deceased, is no defense to this action.

In *Woerner* v. *Woerner*, 171 Cal. 298 [152 Pac. 919], we find the following relative to the power of an attorney: "An attorney has no general authority to act for his client. His stipulation for a disposition of his client's property cannot bind the client if the attorney had no legal authority to make it. At least not unless it is acted upon by the court and carried into the judgment." (Citing authorities.) ██ The authority of the administrator being limited, we do not need to cite authorities to the effect that the administrator could not authorize anyone to act in his stead or in his capacity.

Section 1517 of the Code of Civil Procedure relative to the sale of personal property, is pertinent here. It reads: "All sales of property must be, under oath, reported to and confirmed by the court before title to the property passes." Section 1523 of the Code of Civil Procedure, relative to sales of personal property, reads: "Any such sale shall take effect only upon confirmation by the court, except in the sale of stocks or bonds, when the court has, upon a verified petition previously presented, made its order authorizing the sale and transfer thereof, and fixing the terms and conditions on which the same is to be made."

██ Not having any authority to sell, the conclusion is inevitable that attorney Atran had no authority to receive payment from the defendant. There is nothing in the record indicating that the plaintiff ever gave or intended to give attorney Atran any ostensible authority to act as his agent in the sale of the warrants, or to receive payment therefor. The appellant has not introduced in evidence any testimony indicating the existence of any such ostensible agency, or tending in any particular to show that he was misled by any act of the plaintiff. The defendant simply took the unindorsed warrants, as we have stated, and drew

his check in favor of the attorney, instead of in favor of the administrator of the estate.

That the appellant in this action, by reason of his misplaced confidence, has lost the sum of $1514.70, does not entitle him to reimbursement from the estate of the deceased, or from the administrator thereof.

The defendant in this case was chargeable with knowledge of section 3082 of the Civil Code, defining negotiable instruments, and also with the provisions of section 3111 of the Civil Code, providing that if a negotiable instrument is payable to order, it is negotiated by the indorsement of the holder, and that in this case the owner being deceased, it was necessary for the warrants to bear the indorsement of the legal representative of the deceased.

The judgment is affirmed.