**6 P.(2d) 1021**

## WALLS v. ERUPCION MIN. CO.

### No. 3591.

Supreme Court of New Mexico.

Nov. 3, 1931.

Henry I. Broulett, of Los Angeles, Cal., and Walton & Wiley, of Silver City, for appellant.

E. R. Wright, of Santa Fé, and Knapp & Boyle, of Tucson, Ariz., for appellee.

PARKER, J.

The plaintiff as administrator of the estate of Andrew Bain, deceased, brought suit in the district court in Hidalgo county for the recovery of damages for the alleged unlawful transfer of 3,000 shares of stock in the Erupcion Mining Company against the said company, in the sum of $9,000, and in addition thereto for the sum of $4,000 or more, which had been paid upon the said stock as dividends subsequent to said alleged unlawful transfer of said stock down to the time of bringing suit. The defendant company answered admitting the transfer of the said stock upon the books of the company, but alleging that the same was lawfully and regu-

larly taken; it denied that the value of the stock at the time of such transfer was the sum of $3 per share, and denied that the defendant had since such transfer paid dividends upon the said shares in excess of $4,000. This denial, however, is unimportant, as the defendant afterwards during the trial admitted that the said stock after being transferred was sold for $3 per share, and that it paid dividends upon the said stock in the sum of $6,975.

The transfer of the said stock upon the books of said company was accomplished by reason of an order of the probate court of Grant county directing the sale and transfer of the same. This order or judgment of the probate court was obtained upon the motion or petition of one Jack Stevens, then administrator of the estate of Andrew Bain, deceased, in which he applied to the court for authority to sell the said stock at the then present market price thereof, and alleged that said administrator was in need of funds with which to pay off and discharge certain outstanding, pressing indebtedness and obligations, and that it was to the best interest of the said estate and the heirs of Andrew Bain, deceased, that said stock be sold on the present market. This motion or petition was signed by one C. C. Royall, as attorney for said Jack Stevens, administrator. Thereupon the said probate court did grant said motion or petition and did order, adjudge, and decree that the said administrator be authorized, directed, and empowered to sell and dispose of the stock aforesaid.

For some reason unknown to this court, or to any one else so far as known, except Mr. C. C. Royall, said attorney, said probate court inserted in its order the following paragraph: "It is further by the court ordered, adjudged and decreed that in all things affected by this order, C. C. Royall, of Silver City, N. M., the attorney for the said administrator, do be and he is hereby given the right and authority to represent the said estate and the said administrator and to sell and dispose of the above bonds and stock in conformity with this order and to do any and all things hereunder which the said administrator could do, with the right to execute bills of sale and assignments of said bonds and stock and endorse and sign and deliver the said stock upon such sale."

██ It is upon this part of the order of the probate court that defendant relies for its justification in transferring upon its books the said 3,000 shares of stock. If this part of the order of the probate court was void upon its face for want of jurisdiction, then the judgment of the district court which was in favor of the mining company is erroneous. On the other hand, if said order was merely erroneous and voidable, then in the absence of some showing of fraud on the part of the defendant company, it had a right to rely upon the same and to transfer the said stock on its books. In examining this order of the probate court, it is at once apparent that this paragraph of the order is not within the scope of the application to the probate court, which was simply for authority for the administrator to sell and transfer the said stock. In

the second place, it is apparent that in appointing the said C. C. Royall to sell and dispose of the said stock, the probate court was merely appointing a broker or salesman for the sale of the said stock. He was a person irresponsible to the said court or to the said estate, in the sense that he had given no security of any kind for the fidelity of his action. The mere fact that he is designated in the said order "the attorney for the said administrator" adds nothing whatever to his status. He was merely a broker or salesman. Jack Stevens, the administrator, at the time testified that the said order was made without his knowledge or consent, and there is no evidence in the record to contradict his statement. In fact, he testified that he did not know that the transfer had been effected until long after the same had been done. No authority emanating from the administrator was ever granted to C. C. Royall to sell and transfer this stock. He simply induced the probate court to insert in the judgment granting the said motion of the administrator this paragraph for reasons not shown in the record.

The folly of such an order authorizing an irresponsible person to sell and transfer the assets of an estate without authority from the administrator is made more apparent by allusions in the briefs of counsel that thereafter the said C. C. Royall embezzled the said proceeds of the said sale and pleaded guilty to the charge of embezzlement in the district court. However, this case must be determined upon the question as to whether the probate court without the knowledge of an administrator has authority and jurisdiction to appoint a person unknown to the law and confer upon him the authority to sell and transfer the assets of the estate. The question is not whether Royall embezzled the funds which were the proceeds of the sale. This has nothing to do with the case. So far as the defendant corporation is concerned, there is nothing in this record to show any fraud or carelessness on its part. It simply relied upon this order as authority for Royall to transfer the stock. If the order was void, the corporation is liable regardless of its good faith in the premises.

This proceeding is undoubtedly a collateral attack upon the judgment of the probate court. It seeks to ignore that portion of the order which authorizes Royall to transfer the stock and to proceed against the defendant corporation as if the order had never been made. There seems to be no question about this, and undoubtedly there could be none. In this connection, it is to be remembered that this judgment is a judgment of a court of inferior and limited jurisdiction. It is, however, provided by statute in this jurisdiction that the same presumptions in favor of the judgment of the probate court shall be entertained as are entertained in regard to courts of general jurisdiction. See 1929 Comp. § 34-413. We have then a case of a judgment of a court which is being collaterally attacked and as to which the same presumptions as to jurisdiction and regularity prevail as prevail in regard to judgments of courts of general jurisdiction. But presumptions in regard to jurisdiction do not create jurisdiction in any court

where jurisdiction does not in fact exist. Jurisdiction is the power of the court over the subject-matter and under any circumstances the right to hear and determine litigation in regard thereto. If the court has not the power under any circumstances to hear and determine questions concerning a given subject-matter, then it has no jurisdiction and no presumption in favor of any such jurisdiction will avail the litigant. The judgment in such a case is a nullity, and as Mr. Freeman says in his work on Judgments, p. 643, vol. 1: "A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title. It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of vitality. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it therefore cannot prevent the plaintiff from proceeding to obtain a valid judgment upon the same cause, either in the action in which the void judgment was entered or in some other action. The fact that the void judgment has been affirmed on review in an appellate court or an order or judgment renewing or reviving it entered adds nothing to its validity. Such a judgment has been characterized as a dead limb upon the judicial tree, which may be chopped off at any time, capable of bearing no fruit to plaintiff but constituting a constant menace to defendant."

An examination of this judgment of the probate court shows upon its face that the court was dealing with a subject-matter over which it could not under any circumstances have any jurisdiction. The duties of the probate court are to supervise the administration of estates. It deals with only one representative, viz., the administrator of the estate, who is an officer appointed by him and who must give security for the fidelity of his actions, the accounting for all funds received by him from the disposition of the property of the estate, and the proper distribution of the same to those who are entitled thereto.

The probate court has no power to appoint a stranger to sell and dispose of the property of the estate, who is under no obligations to the estate for the fidelity of his conduct. The order adds nothing to the power of the person so designated by the probate court. Rose v. Newman, 26 Tex. 131, 133, 80 Am. Dec. 646; State v. Younts, 89 Ind. 313; Swan v. Wheeler, 4 Day (Conn.) 137; Succession of

Nora, 2 La. Ann. 229; Appeal of Taylor, 119 Pa. 297, 13 A. 222; Berger v. Arnold (Tex. Civ. App.) 24 S. W. 527; Neal v. Patten, 47 Ga. 73.

If Royall had any power to sell this stock, he must have gotten it from the administrator, which upon the face of this record in this case is shown not to have been given. It is not the business of the probate court to appoint irresponsible selling agents for the purpose of disposing of the assets of the estate. It cannot under any circumstances do so under the law and, therefore, this judgment in so far as it attempted to appoint Royall as a selling agent or broker and vest him with the discretion of the administrator as to the advisability of making a sale was absolutely and wholly without the jurisdiction of the probate court, and is consequently null and void. See Koury v. Castillo, 13 N. M. 26, 79 P. 293, 295.

That was a case in which the probate court of Santa Fé county appointed what it saw fit to call a "superintendent" of the estate of the deceased, with power over the property of the estate, notwithstanding there was a duly appointed and acting administratrix of the estate at the time. The administratrix brought prohibition against the probate court and his appointee as "superintendent," and the territorial court held that this appointment was void for want of jurisdiction and awarded a peremptory writ of prohibition against the appointee. This was a collateral attack upon the judgment of the probate court, the same as in the present case.

Counsel for appellee lay much stress upon the statement in that opinion as follows: "Lopez being the appointee of the court, rather than the judge, as such, his appointment continues in force, notwithstanding the change in the personnel of the court, and may well be prohibited from acting under his void appointment."

In making this statement in the opinion, however, it will be seen that it was inserted merely to show that the appointee was the appointee of the court and not of the judge as such, and that, while acting as said appointee, he was subject to the writ of prohibition. It does not indicate, as counsel for appellee argue, that the court considered the appointment merely voidable and not void.

In holding void the order of the probate court in so far as it conferred authority on Royall, his attorney, to do acts which can only be performed by the administrator, we are not unmindful of the rule which permits a fiduciary or personal representative to employ the services of a broker or agent for certain purposes in making a sale. See Perry on Trusts, §§ 404 and 406. When the personal representative has exercised his discretion as to the time, terms, conditions, and wisdom of sale, the law does not deny to him the right to have the services of an agent in doing mere ministerial acts in consummation of the sale, and an appointment made for such purposes will not be deemed a delegation of his trust. But an administrator cannot himself, and the court cannot for him, appoint an agent and confer upon him the exercise of any of his

discretionary powers. The order here involved attempts to do that very thing and hence is void.

The attorney Royall was "slipped into the shoes" of the administrator, so to speak, by the last portion of the order. He could do anything and everything the administrator could do in effecting this sale. In so far, therefore, as the order is relied upon as the source of power to make the sale in question, we perforce must look to its terms to see what the administrator could do. He could only sell at all "if he shall deem advisable," and then must obtain "the best possible price," not less, of course, than the prevailing market price. The determination of when and whether he had obtained the "best possible price" would in itself seem to involve an exercise of discretion by the person so determining. But whether that be so or not, the administrator was authorized to sell in any event only "if he shall deem advisable." There can be no argument on the proposition that the determination of that question involved an exercise of his discretion.

So far as the record discloses the attorney, Royall, made all of the decisions regarding this sale which involved discretion. He must have determined it was advisable to sell in view of the market and the price offered, because he was not authorized to sell at all until it was so determined. In making this determination he exercised a discretion which the probate court could not lawfully take away from the administrator and bestow upon his attorney or any other person. The decision on advisability of sale was one which of necessity must be made in view of the price offered not below the market price. The fact that the administrator himself may have deemed it advisable to sell at the time of filing the motion does not argue that he would be or was of the same mind at the time of the sale in question. The market price may have been so advancing at the time of sale that had the administrator been permitted to exercise his discretion he would have resolved against a sale.

As before stated, the test of jurisdiction of the probate court to appoint any person other than the administrator to sell and dispose of the property of an estate is whether under any circumstances it can do so. A sale necessarily involves a decision on many discretionary matters such as the time, terms, conditions, and wisdom thereof. If under some circumstances, not negatived by the face of the record, it could appoint such a person, then we assume that the presumption in favor of the judgment of the court would prevail and the defendant company would be justified in acting upon the order. In this connection, it is argued by counsel for appellee that the administrator might have applied to the probate court for this order, obtained the same, in which case it would be at most only erroneous and voidable, but not void. With this contention and argument we cannot agree.

Let us suppose that Jack Stevens, the administrator, went in person to the probate court and moved the court to appoint Roy-

all his (Steven's) agent clothed with the powers conferred by this order to sell and dispose of this stock and to assign the same to the purchaser thereof, and that the probate court upon such application made the appointment. The probate court would still be without jurisdiction and authority to make such an appointment. It has no jurisdiction to appoint an irresponsible stranger to sell and dispose of the assets of the estate, even at the request of the administrator, because as was said in the case of Koury v. Castillo, 13 N. M. 26, 79 P. 293, and in other cases, the probate court has but one representative known to the law to carry out the administration of the estate, and that representative is the administrator himself and no one else. Of course, the administrator under the circumstances above set out might possibly be held responsible to the estate for the defalcation of his court-appointed agent, as he possibly would be responsible to the estate for the defalcation of an agent appointed directly by him. But the appointment of such an agent by the probate court gives him no standing and no right to act in such capacity, simply because such a procedure is unknown to the law and is nowhere and has been at no time by any statute or principle conferred upon the probate court. The circumstances above mentioned would seem to be the only circumstances which could arise and which might induce the probate court to act beyond its jurisdiction. We can imagine no other circumstances which could arise and which could induce the probate court to act outside of its jurisdiction.

In this connection we wish to say that we have searched diligently for some authority in support of this judgment, as the equities of the case seem to be in favor of the action taken by the company. It acted, in so far as is shown by the record, in perfect good faith, relying upon an erroneous view of the law; but these equities cannot prevail against the plain rules of law governing the question. See Wilkinson v. Zumwalt (Cal. App.) 297 P. 94, a case almost parallel on its facts.

But the order of the probate court in this case, in so far as the authority conferred on the attorney, Royall, is concerned is void under another view to be taken of it. It goes beyond the scope of the application and represents the exercise of an excess of jurisdiction on the part of the probate court. While recognizing that the mere failure of a complaint to state a cause of action, or that same would not have been good against a general demurrer, and defects and irregularities in pleadings generally, are quite uniformly held not to open to collateral attack a judgment rendered thereon, nevertheless there is a limit beyond which the courts will not go in sustaining judgments against collateral attack. Mr. Freeman, in volume 1 of his work on Judgments (5th Ed.) at section 355, in dealing with the effect of judgments entered beyond the issues, says: "In some instances courts have undertaken to decide questions not involved in the suit or action before them and to grant relief therein; and their judgments have been assailed for that reason, and to the extent to which they departed from

the matters embraced within the record they have been denied effect. A court is limited in its determination to the matters properly before it. Ordinarily it has no authority to pass upon questions not involved and in respect to which its jurisdiction has not been invoked. For courts cannot ex mero motu set themselves in motion, nor have they power to decide questions except such as are presented by the parties in their pleadings. What is decided within the issues is coram judice; anything beyond is void, unless the parties voluntarily try an issue outside the pleadings. A judgment outside the issues is not a mere irregularity, but is extrajudicial and invalid." See, also, Freeman on Judgments (5th Ed.) § 354 and Munday v. Vail, 34 N. J. Law, 418.

It is well established that a default judgment awarding relief beyond that prayed for is void to that extent. 34 C. J. 192; Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 Ann. Cas. 348, and annotation at page 353; State v. District Court, 86 Mont. 387, 284 P. 128; Petition of Furness, 62 Cal. App. 753, 218 P. 61. See, also, Hurr v. Davis, 155 Minn. 456, 193 N. W. 943, 194 N. W. 379. No good reason suggests itself against applying to orders and judgments entered on ex parte applications the same rule which governs in the case of default judgments where excessive relief is awarded. It is suggested in the texts and cases that the rule voiding a judgment to the extent of relief awarded beyond the scope of a petition is peculiarly applicable to ex parte proceedings. 1 Freeman on Judg-

ments (5th Ed.), § 355, p. 739; Id. § 396, p. 854; Id. Vol. 2, § 666; Id. § 817, p. 1737; Id. § 878; Oldroyd v. McCrea, 65 Utah, 142, 235 P. 580, 40 A. L. R. 230, 243.

The motion upon which the order in question was based is in the record. It asked only for authorization in the administrator to sell. The order while granting that authority also went outside the scope of the relief sought and attempted to confer like powers on the administrator's attorney. To this extent the court exceeded the jurisdiction invoked and such portion of its order consequently is void.

2. It is argued by counsel for the appellee company that the administrator, after being advised that the sale had been consummated, acquiesced in and ratified the sale of the stock, and consequently is estopped to deny the validity of the sale. The facts are that Royall met Stevens, the administrator, on the streets of Silver City and told him that he had sold the stock, and that he had deposited the money in the American National Bank. Stevens took no action to obtain control of the money, the proceeds of such sale, and the bank in which it was deposited failed. It appears, however, that this money was never deposited to the credit of the administrator and was never put into his control. It was deposited in this bank in the name of C. C. Royall, attorney for Jack Stevens, administrator, which was in itself a breach of duty on the part of Royall. But we cannot see how these circumstances could estop a trustee from claiming at any time, in any court,

the property belonging to the estate in question.

A sufficient answer to the argument of counsel for appellee is to be found in the answer filed by appellee. In that answer it does not rely upon any negligence or carelessness on the part of Stevens, the administrator, after he was informed that the stock had been sold and the money deposited in the American National Bank, but on the other hand alleged that the damage suffered, if any, by the administrator was caused by the negligence and carelessness of the said administrator in delivering said certificates into the custody and control of said Royall, thereby enabling him to work a fraud upon the defendant and placing him in a position to do injury to an innocent party. This sets up an entirely different defense from that now claimed by defendant. The facts as shown by the record are that Stevens delivered the unindorsed certificates of stock to Royall for safe-keeping in a fireproof safe in his office and for no other purpose. We cannot see how this fact would estop the administrator of this estate in his claim against the defendant.

Nor does the evidence show ratification. It is indispensable to ratification that the party held thereto shall have had full knowledge of all material facts. Here no such showing is made. The single circumstance exists that the administrator was advised that a sale had taken place. He was not told at what price the stock had sold, nor the gross receipts therefor, so far as the record discloses. The proceeds never reached his hands. Ratification cannot be based upon evidence so slight.

By reason of all of the foregoing it is seen that the judgment of the district court is erroneous and should be reversed, and the cause be remanded with directions to enter judgment for the plaintiff in the amount claimed by him, and

It is so ordered.

BICKLEY, C. J., and SADLER, J., concur.

WATSON and HUDSPETH, JJ., did not participate.